Judge Cahji
delivered his opinion.*
This case depends upon the construction of the following words in the Will of James W. Ball: “ At the death or man-iage of my wife, I give unto my son Cyrus Ball, the use of all the remainder* of my lands that I possess in the County of Lancaster, during his life, and in case he should have heirs lawfully begotten, that he shall or may dispose of the said land, to either or amongst the said heirs, as he shall think proper; but in case that my son should die without such heirs, then my Will is, that the said lands be equally divided amongst my daughters. ” The use of his land given to Cyrus in the *74 íírst branch of the clause, and the power of appointment irrthe se-' eond, I do not consider as affecting at all the character of the devise.' We know that an appointee takes immediately under the Deed or Will creating the power, and just as if he had been named in that Deed or Will. Soulhby v. Stonestreet, 2 Ves. 610; Fearne on Cont. Rem. 100. It was acknowledged by the Counsel for the that the word heirs, as used the testator, must be understood heirs of the body. This, then, is a devisero Cyrus for life, and if he have heirs lawfully begotten of his body, to such of them as he shall appoint; and if he should die without such heirs, .the lands to be divided among the daughters of the testator. The question is, what estate Cyrus took; and that depends on another question, whether the words heirs, &c. in the second branch of the clause, are to be taken as words of purchase, or words <af limitation.
Words of purchase, are such as giv.e the estate, originally, to the heirs, &c. and not through the medium of, or by descent from, the ancestor. Words of limitation, are such as do not give the estate imported by them, originally, to the heirs, &c. described, but only extend the ancestor’s estate jo an estate of inheritance, descendible to the heirs described. As far back as Shelly’s Case, it has been laid down as a rule (never since questioned) “that wherever in the same instrument, there is a limitation to the ancestor for life, and hne to his heirs general or special, the heirs shall not take by purchase, but by descent.”' To this rule, there are a few, and but very few exceptions. They are all very learnedly and accurately defined by Mr. Fearne, in his Kssay on Contingent Remainders, and have so often been the subject of d'seussio-n and decision in this Court,, that it would be worse than useless, to attempt, to enumerate them. Suffice it to say, that neither in a Deed, nor in a Will, would the words used in the case before us, present an exception. In Wills, it is true, a greater latitude is taken; for there, the intention of the testator, unless it violate some rule of Law, is the standard. But cases innumerable might be quoted, to show, that devises clothed iii the same words with ours, to wit: to A. for life, then to the heirs of his body, and on his death without such heirs, over, have been Construed to give A. an estate tail; the words heirs of his body, being, in all such cases, taken as words of limitation, and not of purchase. This is done, not because the testator did not intend 1X> give A. an estate for life; for, it is admitted that he did mean to give him such estate; but it is equally clear, that he intended to pro-, vide, not only for the immediate, but the remote issue of A. and ihat the estate should not go over, before such issue was extiuetj and *76 to effectuate this, the general intent, the words heirs, &.c. are taken as words of limitation, extending the estate of A. to an estate of in* heritanee descendible to the heirs described.
The latest English case I have seen on this subject, is that of Doe ©n the demise of Cole v. Goldsmith, cited by the Counsel for the Appellee from 7 Taunt. 209. That was, I think, a stronger case than ours. It was aa devise to F. G. and his assigns for life, and immediately after his decease, unto the heirs of his body lawfully' to he begotten, in such parts and shares as the said F. G. should by Will or Deed appoint; and in default of such heirs of his body, then immediately on his decease, over to J. G.” The Court, without the least doubt, held it to be an estate tail in F. G., and destroyed by the recovery which he suffered.
Under the doctrines of the English Law, then, there is no doubt on my mind, that the son Cyrus Ball would take under this Will an es’.ate tail, enlarged by our Statute into a fee.
But it was insisted, that under our Statute dispensing with words of inheritance in Deeds and Wills, a different construction ought to prevail: that by it, we must consider a fee simple given to the heirs of Cyrus Ball, which they take as purchasers; and which prevents the enlargement of the estate of Cyrus into a fee tail. The words of the Law are, “Every estate in lands, which shall hereafter be granted, conveyed or devised to one, although other words, heretofore necessary to transfer an estate of inheritance, be not added, shall be deemed a fee if a less estate be not limited words, or do not appear to have been granted, conveyed, or construction or of Law.” I have considered this Law as meaning simply to dispense with words of inheritance, and transferring the fee, in those cases, where before, for want of such words, an estate for life only would pass. But, I have never supposed it was intended by it, to break up from their foundation, the ancient and general rules of construction, and convert those into words of purchase, which, for centuries, had been settled as words of limitation. So far from disturbing ancient rules, the framers of that Law seem to have taken especial care to preserve them.
Before, then, we can bring our Statute to bear upon any case, we must ascertain that by the established rules of construction, an estate, for life would have passed. But, we know that where land is de-vised to one for life, then to his heirs or the heirs of his body, and' on failure of such heirs, over, no estate passed to the heirs or issue; but, these words are used as words of limitation, describing the estate of the ancestor, and extending it to a fee tail. Here, then, is no case presented for the operation of our Act. In the same Statute o% *77 1785, fi'om which the clause above quoted is taken, we find a decís-' x-ation, that every estate in lands which hereafter slxall be limited, s& that as the Law aforetime was, such estate would have been an estate tail, shall be deemed to be an estate in fee simple. Now, we know, that by the Law, as it had long before been settled, if an estate had been given to A. for life, then to the heirs or issue of A., and if he die without such issue, over; A. took an estate tail; and this, the-Statute says, shall be a fee. But, if we say, that under the Law dispensing with words of inheritance, the heirs of the body of A. become purchasers, and take the fee, we pi'event A,s life estate from being enlarged into a fee tail, and thus withdraw it from the Act. This would be setting one clause of the same act in direct opposition-to another. This, too, would violate the rule laid down and steadily adhered' to by this Court, in all the cases which have come before it. In the case of Bells v. Gillespie, 5 Rand. 273, I have-more particularly noticed these cases, to which I refer.
I conclude, that Cyrus Ball took an estate tail, converted by the Act into a fee; which fee was conveyed to the Defendant Baynet and that the Judgment of the Court below be affirmed.
The other Judges concuiTed, and the Decr'ee was affirmed-

 Judges Ghees and Cabeee, absent..